**UNITED STATES DISTRICT COURT**
**FOR THE DISTRICT OF COLUMBIA**

**BECKY ROBERTS,**
    **Plaintiff,**

       **v.**

**THE UNITED STATES OF AMERICA,**
    **et al.,**
    **Defendants.**

**Civil Action No.  11-0706 (JDB)**

<u>**MEMORANDUM OPINION**</u>

Plaintiff Becky Roberts, an active duty officer in the United States Navy, brings this action against the United States of America, the Secretary of the Navy, Ray Mabus, and the Chairman of the Board for Correction of Naval Records (collectively "defendants").  She alleges that her superior officers made several erroneous promotion recommendations that prevented her timely promotion to a higher rank.  Roberts contends that the defendants' failure to correct these recommendations when she petitioned them to do so violated the Administrative Procedure Act and the United States Constitution.  Now before the Court are defendants' motion to dismiss the complaint or alternatively for summary judgment and Roberts' cross-motion for summary judgment. For the reasons set out below, the Court will grant defendants' motion and deny plaintiff's cross-motion.

I.  <u>Background</u>

Roberts reported to the Office of Naval Intelligence ("ONI") on February 16, 1996 at the rank of Lieutenant Commander.  First Am. Compl. ¶ V; Pl.'s SOF ¶ 3.[1]  Naval officers' supervisors, or "reporting seniors," submit officer fitness reports yearly or upon the detachment of either the officer or the supervisor.  A Navy directive, ONI Instruction 1610.2, issued in January 1996, guided the preparation of officer fitness reports.  Pl.'s SOF ¶¶ 3-4; see Administrative Record ("A.R.") at 92-112.  Reporting seniors rate each officer from 1 (lowest) to 5 (highest) in several categories and average the scores to generate a "trait average" for each officer.  A.R. at 68, 95-96.  On the basis of this trait average, the reporting senior makes promotion recommendations for each officer on a five-step scale:  "significant problems," "progressing," "promotable," "must promote," and "early promote."  See id. at 68.  The directive provided instruction for generating promotion recommendations from trait averages.  As explained in more detail below, the directive included a "baseline guide" for translating trait averages into promotion recommendations; this guide indicated that "Early Promote" corresponded to a trait average of 3.90 or above, "Must Promote" corresponded to a trait average of 3.50 to 3.89, and "Promotable" corresponded to a trait average of 3.00 to 3.49.  See id. at 96.  The directive also included "mandatory limits on the number of members that may be recommended" for the "Early Promote" and "Must Promote" categories.  See id. at 95-96.

In October 1996, plaintiff received her first fitness report for her assignment.  Pl.'s SOF ¶ 5.  She received a performance trait average of 4.17 and was recommended as "Must Promote."  Id.  In June 1997, plaintiff had a conversation with the same supervisor

---

[1] Because the Court grants defendants' motion, it views the facts in the light most favorable to plaintiff and relies on the facts as recounted in plaintiff's amended complaint and Statement of Facts, as well as the administrative record.

regarding an upcoming fitness report precipitated by the supervisor's detachment from naval service. A.R. at 47. The reporting senior indicated that plaintiff's trait average had improved from the previous period. Id. The supervisor indicated that, despite plaintiff's improved average, the supervisor was constrained in his promotion recommendations and plaintiff was now tied with another officer whom the supervisor wanted to recognize for his improvement. Id.; see Pl.'s SOF ¶¶ 16-17. The supervisor also indicated that Roberts was assigned to an "infrastructure billet,"[2] rather than a billet in "intelligence production," and that the Command Ranking Board looked upon that assignment with disfavor. A.R. at 47; see Pl.'s SOF ¶ 18. The supervisor indicated that he was accordingly reducing her promotion recommendation from "Must Promote" to "Promotable." A.R. at 47. The supervisor nonetheless assured Roberts that "this decline would not be detrimental to her promotion nor send the wrong message to the selection board," since her trait average was high and this was the most important element for promotion. Id. at 48; see Pl.'s SOF ¶ 91. Later that month, she received the fitness report with a trait average of 4.33 and a recommendation of "Promotable." Pl.'s SOF ¶ 8. The report indicated that the promotion recommendation "in no way reflects a decline in her performance, but a change in the number of officers in the compet[i]tive category." A.R. at 85. This latter statement was incorrect; the number of officers in the category had not changed. Pl.'s SOF ¶ 22.

In September 1997, the directive governing the preparation of officer fitness reports was revised slightly. Pl.'s SOF ¶ 11. The directive kept in place the same "mandatory limits" on the number of members that could be rated Must Promote and Early Promote and raised upward the trait averages corresponding to each promotion

---

[2] A "billet" is a position or job.

recommendation.  See A.R. at 108-09.[3]  In October 1997, plaintiff received a fitness report from her new supervisor; she received a trait average of 3.83 and an unchanged "Promotable" recommendation because the new reporting senior "wished to maintain all officers in the same category during the abbreviated reporting period."  Pl.'s SOF ¶¶ 10, 24.  In October 1998, plaintiff received a trait average of 4.00 and an increase to a "Must Promote" recommendation.  Pl.'s SOF ¶ 29.

Roberts submitted a petition to the Board for Correction of Naval Records in March 1999.  Pl.'s SOF ¶ 26; A.R. at 234.  This petition sought to change her June 1997 performance recommendation to "Must Promote" or to delete the entire fitness report from her record, and also to delete the October 1997 report from her record.  A.R. at 234.  The petition was denied in October 2000.  Pl.'s SOF ¶ 27.  Plaintiff contends that as a result of the June and October 1997 reports, she was "deselected from a field grade" in "residence war college billet" and "was not selected for promotion to Commander on the first review" in May 2001.  First Am. Compl. ¶¶ XV-XVI; see A.R. at 31-32.  In November 2001, the reporting senior who initially downgraded plaintiff's rating to Promotable in June 1997 wrote a letter recommending her promotion, indicating that he was "unfamiliar[] with the long term impact of subtle influences" of the reporting system, which "should not be used to negatively impact [plaintiff's] promotability."  A.R. at 49.  Plaintiff was selected for promotion to "Commander" on second review in May 2002.  First Am. Compl. ¶ XVII; see A.R. at 32.

After a series of fitness reports and reassignments, in October 2002 plaintiff transferred to the Joint Forces Intelligence Command.  First Am. Compl. XXIV; Pl.'s

[3] The directive revised the "baseline guide" for translating trait averages to promotion recommendations for officers, raising the Early Promote range to 4.17 to 4.33 (from 3.90 or above) and the Must Promote Range to 3.83 to 4.17 (from 3.50 to 3.89).  A.R. at 109.

SOF ¶ 38.  In fitness reports in August 2003 and 2004, she received performance recommendations of "Early Promote," with trait averages of 4.33 and 4.5, respectively. Pl.'s SOF ¶¶ 40-41.  However, when plaintiff's commanding officer retired in May 2005, he rated plaintiff as "Promotable" despite an increase in her trait average to 4.67.  Id. ¶ 42.  Plaintiff discussed the lower rating with her supervisor, who explained that another officer was being screened for a third time by the Commander Sea Screening Board.  Pl.'s SOF ¶43.  The supervisor stated that he was "helping out 'fellow' officers" by giving the higher recommendation to the officer being reviewed a third time.  A.R. at 33.  Plaintiff contends that as a result of this fitness report, she was not selected for a later promotion. Pl.'s SOF ¶ 68.

In October 2008, plaintiff filed a second petition with the Board.  See A.R. at 7-29.  This petition argued again that the 1997 fitness reports were invalid and also that the 2005 report was a result of invidious gender discrimination.  See A.R. at 16.  In February 2009, the Board requested that certain offices provide advisory opinions regarding the petition.  See A.R. at 135.  The Navy Equal Employment Opportunity Office, the Navy's Office of Legal Counsel, and the Navy Personnel Command each submitted an advisory opinion recommending denial of the petition.  See A.R. 54-65.  Plaintiff responded to these opinions in September 2009.  See A.R. at 210-14.  In December 2009, the Board denied plaintiff's petition.  See A.R. at 2-3.

Plaintiff then filed a complaint in the United States Court of Federal Claims on March 26, 2010.  See Roberts v. United States, 98 Fed. Cl. 130, 135 (2011).  She alleged that the June and October 1997 fitness reports and the May 2005 fitness report were prepared improperly, that the Board acted arbitrarily and capriciously and without the

support of substantial evidence by denying her October 2008 petition, and that the Navy's actions deprived her of liberty and property interests in violation of the Due Process Clause of the Fifth Amendment of the United States Constitution. Id. That court determined that it did not have jurisdiction over plaintiff's claims because the relief sought — correction of plaintiff's records — was not "money-mandating": "[e]ven if the court were to grant Plaintiff all of the relief she seeks, another selection board would have to review Plaintiff's service records and determine whether she should have been promoted." 98 Fed. Cl. at 140-141. The court determined that the United States District Court for the District of Columbia was the appropriate forum for plaintiff's claims under the Administrative Procedures Act and United States Constitution. Id. at 143-44. The court therefore transferred plaintiff's case to this Court. Id. at 144.

Roberts filed an amended complaint in this Court on June 2, 2011. In it, she alleges that the Board's failure to remove the two 1997 fitness reports and the May 2005 fitness report was arbitrary and capricious and not supported by substantial evidence. See First Am. Compl. ¶¶ XXXV-XLIII. She also alleges that the Navy violated her constitutional rights under the Due Process Clause by failing to correct her record. See id. ¶¶ XLV-XLVI. Plaintiff seeks to have the three fitness reports set aside, to have the Navy conduct special selection boards to ascertain whether she should have been promoted on the two occasions that she was not, and to be awarded pay and benefits for the years she alleges she should have been employed at a higher rank. See id. at 8-9.

II.  Standard of Review

All that the Federal Rules of Civil Procedure require of a complaint is that it contain "'a short and plain statement of the claim showing that the pleader is entitled to

relief,' in order to 'give the defendant fair notice of what the . . . claim is and the grounds

upon which it rests.'" Bell Atl. Corp. v. Twombly, 550 U.S. 544, 555 (2007) (quoting

Conley v. Gibson, 355 U.S. 41, 47 (1957)); accord Erickson v. Pardus, 551 U.S. 89, 93

(2007) (per curiam).  Although "detailed factual allegations" are not necessary to

withstand a Rule 12(b)(6) motion to dismiss, to provide the "grounds" of "entitle[ment] to

relief," a plaintiff must furnish "more than labels and conclusions" or "a formulaic

recitation of the elements of a cause of action."  Twombly, 550 U.S. at 555-56; see also

Papasan v. Allain, 478 U.S. 265, 286 (1986).  "To survive a motion to dismiss, a

complaint must contain sufficient factual matter, accepted as true, to 'state a claim to

relief that is plausible on its face.'"  Ashcroft v. Iqbal, 129 S. Ct. 1937, 1949 (2009)

(quoting Twombly, 550 U.S. at 570); accord Atherton v. District of Columbia Office of

the Mayor, 567 F.3d 672, 681 (D.C. Cir. 2009).  A complaint is plausible on its face

"when the plaintiff pleads factual content that allows the court to draw the reasonable

inference that the defendant is liable for the misconduct alleged."  Iqbal, 129 S. Ct. at

1949.  This amounts to a "two-pronged approach" under which a court first identifies the

factual allegations entitled to an assumption of truth and then determines "whether they

plausibly give rise to an entitlement to relief."  Id. at 1950-51.

        The notice pleading rules are not meant to impose a great burden on a plaintiff.

Dura Pharm., Inc. v. Broudo, 544 U.S. 336, 347 (2005); see also Swierkiewicz v. Sorema

N.A., 534 U.S. 506, 512-13 (2002).  When the sufficiency of a complaint is challenged

by a motion to dismiss under Rule 12(b)(6), the plaintiff's factual allegations must be

presumed true and should be liberally construed in his or her favor.  Leatherman v.

Tarrant Cnty. Narcotics & Coordination Unit, 507 U.S. 163, 164 (1993); Phillips v.

Bureau of Prisons, 591 F.2d 966, 968 (D.C. Cir. 1979); see also Erickson, 551 U.S. at 94

(citing Twombly, 550 U.S. at 555-56). The plaintiff must be given every favorable

inference that may be drawn from the allegations of fact. Scheuer v. Rhodes, 416 U.S.

232, 236 (1974); Sparrow v. United Air Lines, Inc., 216 F.3d 1111, 1113 (D.C. Cir.

2000). However, "the court need not accept inferences drawn by plaintiffs if such

inferences are unsupported by the facts set out in the complaint." Kowal v. MCI

Commc'ns Corp., 16 F.3d 1271, 1276 (D.C. Cir. 1994). Nor does the court accept "a

legal conclusion couched as a factual allegation," or "naked assertions [of unlawful

misconduct] devoid of further factual enhancement." Iqbal, 129 S. Ct. at 1949-50

(internal quotation marks omitted); see also Aktieselskabet AF 21. November 21 v. Fame

Jeans Inc., 525 F.3d 8, 17 n.4 (D.C. Cir. 2008) (explaining that the court has "never

accepted legal conclusions cast in the form of factual allegations").

Under Fed. R. Civ. P. 56(a), summary judgment is appropriate when the pleadings

and the evidence demonstrate that "there is no genuine dispute as to any material fact and

the movant is entitled to judgment as a matter of law." Id. In a case involving review of

a final agency action under the Administrative Procedure Act, 5 U.S.C. § 706, however,

the standard set forth in Rule 56(a) does not apply because of the limited role of a court in

reviewing the administrative record. See Nat'l Wilderness Inst. v. United States Army

Corps of Eng'rs, 2005 WL 691775, *7 (D.D.C. 2005); Fund for Animals v. Babbitt, 903

F. Supp. 96, 105 (D.D.C. 1995), amended on other grounds, 967 F. Supp. 2d 6 (D.D.C.

1997). Under the APA, it is the role of the agency to resolve factual issues to arrive at a

decision that is supported by the administrative record, whereas "the function of the

district court is to determine whether or not as a matter of law the evidence in the

administrative record permitted the agency to make the decision it did."  See Occidental

Eng'g Co. v. INS, 753 F.2d 766, 769-70 (9th Cir. 1985); see also Northwest Motorcycle

Ass'n v. United States Dep't of Agriculture, 18 F.3d 1468, 1472 (9th Cir. 1994) ("[T]his

case involves review of a final agency determination under the [APA]; therefore,

resolution of th[e] matter does not require fact finding on behalf of this court.  Rather, the

court's review is limited to the administrative record.").  Summary judgment thus serves

as the mechanism for deciding, as a matter of law, whether the agency action is supported

by the administrative record and otherwise consistent with the APA standard of review.

See Richard v. INS, 554 F.2d 1173, 1177 & n.28 (D.C. Cir. 1977), cited in Bloch v.

Powell, 227 F. Supp. 2d 25, 31 (D.D.C. 2002), aff'd, 348 F.3d 1060 (D.C. Cir. 2003).III.

Finally, a federal court has jurisdiction to review the decisions of a civilian board

constituted to correct military records, but "we do so under an 'unusually deferential

application of the 'arbitrary or capricious' standard' of the Administrative Procedure Act."

Cone v. Caldera, 223 F.3d 789, 792-93 (D.C. Cir. 2000) (quoting Kreis v. Sec'y of the

Air Force, 866 F.2d 1508, 1514 (D.C. Cir. 1989)).

III.  Analysis

        Plaintiff seeks review of the Board for Correction of Naval Records' decision not

to modify her records by correcting or removing the two 1997 fitness reports and the May

2005 fitness report.  She alleges that she was deprived of her constitutional right to due

process.  Plaintiff also claims that the May 2005 fitness report was prepared as a result of

gender discrimination in violation of her right to equal protection.  She further alleges

that the Board's decision was arbitrary and capricious and not supported by substantial

evidence, in violation of the Administrative Procedures Act.  Plaintiff also seeks the

convening of special selection boards to review decisions not to award her two promotions.

a. Due Process Claim

Roberts alleges that she "enjoyed a property interest in accrued pay and a liberty interest in receiving a fair and accurate [fitness report] as well as being promoted" and that the defendants deprived her of "pay and prestige in violation of the due process clause of the Fifth Amendment to the United States Constitution" by "failing to correct Roberts' record."  First Am. Compl. ¶¶ XLV-XLVI.  Plaintiff argues that "[b]y flaunting the requirements of the governing directives, the reporting seniors improperly burdened Commander Roberts' right to due process."  Pl.'s Cross-mot. at 28-31.  Defendants counter that no constitutionally protected property or liberty interest exists in a military promotion.  See Defs.' Mem. in Supp. of Defs.' Mot. to Dismiss or, in the Alternative, Mot. for Summ. J. ("Defs.' Mem.") at 16-18.

i. Legal Standard

The Fifth Amendment to the United States Constitution precludes the government from depriving its citizens of a property or liberty interest without due process of law.  To obtain an interest that is protected by the Due Process clause, a person must have a "legitimate claim of entitlement to it."  Board of Regents v. Roth, 408 U.S. 564, 577 (1972).  The interest does not arise from the Constitution itself but from "independent source[s] such as state law."  Id.  Moreover, the Due Process Clause "does not protect everything that might be described as a 'benefit,'" and a benefit "is not a protected entitlement if government officials may grant or deny it in their discretion."  Castle Rock v. Gonzales, 545 U.S. 748, 756 (2005).

As explained by the D.C. Circuit, judicial review of military decisions must be limited. See Blevins v. Orr, 721 F.2d 1419, 1421 (D.C. Cir. 1989) (citing Orloff v. Willoughby, 345 U.S. 83, 94 (1953)).  Nonetheless, "courts have evinced increased willingness to review military actions alleged to contravene express constitutional, statutory, or regulatory requirements."  Id.  Blevins held that "military decisions simpliciter are not susceptible to due process challenges, inasmuch as there exists no property or liberty interest in military promotion per se."  Id. at 1421-22 (citing Pauls v. Sec'y of the Air Force, 457 F.2d 294, 297 (1st Cir. 1972)).  The Blevins court distinguished the situation in which the plaintiff "has failed to demonstrate any statutory or regulatory requirement which was not satisfied" from "those that involve the contravention of a specific statute or regulation."  Id. at 1422.  Relying on Blevins, the D.C. Circuit upheld the dismissal of a due process claim stemming from a plaintiff's disenrollment from the Navy's Officer Candidate School, noting that the plaintiff failed to "point[] to any statute or regulation limiting the Navy's discretion to disenroll an [Officer Candidate School] trainee."  Yamashita v. England, No. 02-5176, 2002 WL 31898182, at *1-2 (D.C. Cir. Dec. 23, 2002); cf. Smith v. Sec'y of the Army, 384 F.3d 1288, 1294 (Fed. Cir. 2004) ("[A]n action for money arises under the Military Pay Act in the unusual case in which, on the plaintiff's legal theory, there is a clear-cut legal entitlement to the promotion in question, i.e., he has satisfied all the legal requirements for promotion, but the military has refused to recognize his status." (quotation marks omitted)).

ii.  Analysis

The Court is not persuaded by the government's bald claim that "no serviceman or servicewoman is entitled to a promotion."  Defs.' Mem. at 16.  Although a single sentence

from Blevins could, in isolation, be read to suggest that result, the remainder of the decision and subsequent cases make clear that a servicewoman may have an entitlement to a promotion due to an applicable statute or regulation.[4] This reasoning is entirely consistent with the Roth line of cases, which indicate that a due process claim does not spring from the assertion of an entitlement per se, but can stem from a "legitimate claim of entitlement" in a statute or regulation.  Compare Roth, 408 U.S. at 577 ("legitimate claim of entitlement"), with Smith, 384 F.3d at 1294 ("clear-cut legal entitlement"), and Blevins, 721 F.2d at 1422 ("contravention of a specific statute or regulation").  Here, plaintiff's claim is that the Navy directive regarding the translation of trait averages into promotion recommendations operates as such a regulation, giving her a protected interest in her fitness report.

The Court finds, however, that the Navy directive upon which Roberts relies is insufficiently mandatory to give her a claim of entitlement under the Due Process Clause. That directive, issued in January 1996, contained a section entitled "Determining Performance Grades and Promotion Recommendations."  AR at 315, 318.  Within this section, the directive stated in part:

> There are mandatory limits on the number of members that may be recommended for 'early promote' and 'must promote.'  The upper limits have been established as follows: (round up to the nearest whole number)
>
> (1) Early Promote - 20 percent (each pay grade)
> (2) Early Promote and Must Promote combined
>     (a) O-5 and O-6 - 40 percent

---

[4] The key language from Blevins is that "military decisions simpliciter are not susceptible to due process challenges, inasmuch as there exists no property or liberty interest in military promotion per se." 721 F.2d at 1421-22.  The government's briefing omits the word "simpliciter" without signifying the omission with an ellipsis.  See Defs.' Mem. at 16.  Ironically, the word omitted by the government helps their argument. "Simpliciter" means "[i]n a simple or summary manner; simply," as well as "[a]bsolutely, unconditionally, per se."  Black's Law Dictionary 1510 (9th ed. 2009).  Hence, the word supports the government's contention that promotion decisions simply and unconditionally are not covered by the Due Process Clause. In any event, the other language from Blevins and later cases makes the doctrine sufficiently clear.

     (b) O-3 and O-4 - 50 percent . . .

The promotion recommendation will be based on the individual trait average.  In arriving at this average, each performance trait standard must be carefully reviewed, then weighed together before arriving at a final performance trait grade.  <u>Objective and reasonable assignment of performance trait grades is the single most significant feature of the new performance evaluation and counseling system.</u> . . .

The promotion recommendation should also take into account the difficulty of the assignment and the reporting senior's judgment of the member's likely value to the Navy in the next higher grades. . . .

The following baseline guide is established to determine promotion recommendations.  For example, if a member's trait average is 3.89, he/she will probably not be recommended for "early promote."  However, if greater than 20 percent of a summary group falls within the "early promote" range, those members with lower trait averages may be recommended for "must promote" instead.

     (1) Early Promote - 3.90 or above
     (2) Must Promote - 3.50 to 3.89
     (3) Promotable - 3.00 to 3.49

AR at 318-19.[5]

     The language of this directive gives too much discretion to the reporting senior for it to provide a legal entitlement to a particular promotion recommendation.  The crux of plaintiff's due process claim is that she received trait averages above 3.90 but did not receive an "early promote" recommendation.  But the directive itself refers to the ranges of trait averages and corresponding promotion recommendations merely as a "baseline guide."  That the reporting senior maintains some discretion is confirmed by the sentence indicating that a trait average of 3.89 would only "probably" prevent an "early promote" recommendation; if the reporting seniors were strictly bound by the ranges, a 3.89 would definitely prevent an "early promote" recommendation.  Furthermore, the directive

_____

[5] The revision to this directive in September 1997 <u>raised</u> the trait average baselines for officer promotion recommendations, which arguably weakens plaintiff's case.  <u>See</u> A.R. at 109.

makes clear that the 20 percent cap on "early promotes" was "mandatory" and that members with trait averages of 3.90 or above still might not receive an "early promote" if too many other members received sufficiently high trait averages.

Hence, the directive by its own terms simply does not create an entitlement to an "early promote" recommendation for all members receiving trait averages above 3.90. Plaintiff cannot therefore rely on the directive as a "legitimate claim of entitlement" subject to protection by the Due Process Clause.  Cf. Castle Rock, 545 U.S. at 760 ("We do not believe that these provisions of Colorado law truly made enforcement of restraining orders mandatory.").  Plaintiff's repeated assertions that "the provisions of the two directives are mandatory and not permissive," see, e.g., Pl.'s Cross-mot. at 25, simply misses the point that correspondence between trait averages and promotion recommendations is only a "baseline guide" and is subject to the mandatory limit in any event.  Accordingly, the Court will grant defendants' motion with respect to the due process claim.

b.  Gender Discrimination Claim

Roberts alleges that "[w]hen asked why her fitness report promotion recommendation was downgraded, the reporting [senior] explained that another officer was being screened for a third time by the Commander Sea Screening Board and that he needed to help out 'fellow officers.'"  Pl.'s SOF ¶ 43.[6]  Plaintiff maintains that she therefore "has presented direct and concrete evidence, through her affidavit, that gender discrimination occurred" and that "[t]hese actions are then subject [to] intermediate scrutiny, requiring an important governmental objective and a means substantially related

---

[6] Roberts' more contemporaneous statement to the record, dated May 15, 2005, was that, after praising her accomplishments, the "Reporting Senior ended the brief of my performance and said, 'but I must take care of fellow officers' as I was handed my report to review."  See A.R. at 45.

to achievement of that objective."  Pl.'s Cross-mot. at 16 (citing United States v. Virginia, 518 U.S. 515, 533 (1996)).  Plaintiff argues that the May 2005 fitness report and the Board's decision rejecting her appeal of that fitness report were therefore improper.  See id. at 16-17.  Defendants contend that Roberts has proffered insufficient evidence of discriminatory intent or purpose — merely her supervisor's use of the word "fellow" — to make out a discrimination claim.  See Defs.' Mem. at 26-30. Plaintiff responds:  "There is more to this case than a lowered average and the use of the term 'fellow.'  The reduction in the promotion recommendation is just not consistent with the increased trait average and [plaintiff's] arduous tours in combat areas.  The lack of similar combat tours by the 'fellows,' who were male, and the stated decision to help them out is strong evidence of an ulterior and invidious motive."  Id. at 17.

i.  Legal Standard

        Plaintiff and defendants have both cited much law that is not directly applicable here.  Plaintiff relies on United States v. Virginia, 518 U.S. 515 (1996), among other cases, for the proposition that government actions based on gender discrimination are subject to "intermediate scrutiny."  But United States v. Virginia dealt with "cases of official classification based on gender."  See 518 U.S. at 532-533.  On the other hand, defendants rely on Texas Dept. of Community Affairs v. Burdine, 450 U.S. 248, 253-54 (1981), for the proposition that plaintiff "must prove by a preponderance of the evidence that she was rejected from employment (or promotion) under circumstances which rise to an inference of unlawful discrimination."  Defs.' Mem. at 27.  But Burdine arose under Title VII of the Civil Rights Act of 1964, 42 U.S.C. § 2000e et seq. — not a cause of action cited by plaintiff.

In the Court's view, plaintiff's argument that her 2005 fitness report was improper because that report reflected unconstitutional gender discrimination falls under the framework for equal protection violations articulated in <u>Village of Arlington Heights v. Metropolitan Housing Development Corp.</u>, 429 U.S. 252 (1997).  To make out a claim for a violation of equal protection due to gender discrimination, a plaintiff must show she suffered purposeful or intentional discrimination on the basis of gender.  <u>See</u> <u>Back v. Hastings on Hudson Union Free Sch. Dist.</u>, 365 F.3d 107, 118 (2d Cir. 2004) (citing <u>Vill. of Arlington Heights</u>, 429 U.S. at 264-65).  A plaintiff need not show that the challenged action rested solely on discriminatory purposes, only that the discriminatory purpose was a "motivating factor."  <u>Vill. of Arlington Heights</u>, 429 U.S. at 265-66.  "Determining whether invidious discriminatory purpose was a motivating factor demands a sensitive inquiry into such circumstantial and direct evidence of intent as may be available."  <u>Id.</u> at 266.

Plaintiff's complaint frames her constitutional claim as a challenge to the Board's decision not to correct her record by removing the 2005 fitness report that she alleges was prepared as a result of invidious gender discrimination.  <u>See</u> First Am. Compl. ¶¶ XXXVIII-XL.  "The Secretary of a military department, acting through a civilian board, 'may correct any military record when the Secretary considers it necessary to correct an error or remove an injustice.'"  <u>Cone</u>, 223 F.3d at 792 (quoting 10 U.S.C. § 1552(a)); <u>see</u> <u>Mueller v. Winter</u>, 485 F.3d 1191, 1198 (D.C. Cir. 2007) (applying standard to decision by Board for Correction of Naval Records).  An officer's evaluations "are presumed to be administratively correct and to represent the considered opinions and objective judgment of the rating officials at the time of preparation."  <u>Cone</u>, 223 F.3d at 792 (internal

16

quotation marks and alteration omitted).  With respect to a board's decision reviewing an

evaluation, there is a "strong but rebuttable presumption that administrators of the

military, like other public officers, discharge their duties correctly, lawfully, and in good

faith."  Frizelle v. Slater, 111 F.3d 172, 177 (D.C. Cir. 1997) (internal quotation marks

omitted).

ii.  Analysis

      The Board's December 2009 decision stated that it considered the advisory

opinion furnished by the Office of the Chief of Naval Operations and three advisory

opinions from Navy Personnel Command.  See A.R. at 2.  The Board reported that it

"substantially concurred with the comments contained in the advisory opinions."  Id. at 3.

The Office of the Chief of Naval Operation's Director of the Navy Equal Opportunity

Office stated that plaintiff "does not make a compelling case in support of her allegations

of Gender Discrimination."  A.R. at 54.  The opinion further stated:  "The claim that the

reporting senior informed her that he wanted to help out 'fellow' officers is not

automatically exclusionary based on gender.  The word 'fellow' does not automatically

denote a male member.  As an associate or peer of the person referenced, she is

considered a 'fellow' officer as well."  Id.  The opinion also indicated that "[t]he reporting

senior had not demonstrated a pattern of gender discrimination."  Id.  The advisory

opinion from Legal Counsel in Navy Personnel Command also rejected plaintiff's claim

on the ground that "applicant offers no corroborating evidence to substantiate her

allegation that the [supervisor] made such a statement" and that "[a]ssuming the

[supervisor] made the statement, the word 'fellow' is not a gender specific term."  Id. at

60.

The Court finds that the Board's decision was appropriate because plaintiff has not asserted facts suggesting intentional discrimination on the basis of gender. Both here and before the Board, Roberts has insisted that "[t]he use of the term 'fellow' on its face is strong evidence of invidious discrimination since 'fellow' is normally used in the male sense." A.R. at 13. But this statement is simply incorrect. When used as a noun, "fellow" can indeed mean "man," as well as, among other things, "companion, comrade, associate"; the dictionary notes that this latter meaning is "used chiefly of men." Webster's Third New Int'l Dictionary 836 (1993). But there is no particular reason to believe that the word maintains this connotation when used as an adjective, as it was here. As an adjective, the primary meanings of "fellow" are: "belonging to the same group or class as oneself or as another," "having or sharing the same occupation or avocation," "experiencing or suffering the same fate," "having the same weaknesses or strengths," or "subject to the same government or political or civil obligations or having the same allegiance." Id. Common sense and usage confirm that "fellow" is used as an adjective without a connotation of gender. (If a judge were to say that he "needed to help out fellow judges," it would be quite a stretch to infer the gender of the judges from the comment.) In this context, then, the phrase "fellow officers" most clearly suggests the meaning of "others sharing the avocation of officer." Without any specific reference to gender, there is no reason to believe that "fellow" used in this way invokes gender. By asserting that her supervisor made explicit reference to "need[ing] to help out 'fellow officers,'" then, Roberts has not asserted much at all.

Without having asserted any affirmative support that her promotion recommendation was based on gender, plaintiff's argument relies simply on the fact that

two of the peers who were ranked above her were men and that her promotion

recommendation went down even though her trait average went up during a period of

"arduous service."  See Pl.'s Cross-mot. at 17; A.R. at 43; Defs.' SOF ¶ 9.  But as

explained above, the translation from trait average to promotion recommendation was

only a guideline, subject to a strict quota based on the total percentage of promotion

recommendations the ranking senior was permitted to award.  An increased trait average

would thus not necessarily indicate any particular promotion recommendation.  Given

this context, the fact that a few of plaintiff's colleagues who were ranked above her were

men is insufficient evidence to show that gender was a "motivating factor" in the decision

under the "sensitive inquiry into such circumstantial and direct evidence of intent as may

be available," Vill. of Arlington Heights, 429 U.S. at 265-66.  The Board's rejection of

Roberts' claim of gender discrimination, then, was eminently reasonable, and plaintiff has

not asserted facts that could possibly overcome the presumption of correctness afforded

to it.  Accordingly, the Court will grant summary judgment in favor of defendants with

respect to the gender discrimination claim.

c.  Arbitrary and Capricious and Substantial Evidence Claims

Roberts also asserts that the Board's decision not to remove the two 1997 fitness

reports and the May 2005 fitness report was arbitrary and capricious and not supported by

substantial evidence, in violation of the Administrative Procedure Act.  See First Am.

Compl. ¶¶ II, XXXV-XLIII.  Plaintiff contends that the Board "did not consider all

aspects of the problem or the relevant factors," such as the difficulty of plaintiff's

assignments.  Pl.'s Cross-mot. at 12.  She argues that the Board "merely rubber stamped

the 'advisory opinions' provided by the Navy."  See id. at 12-13, 17, 18.  She argues as

well that the Board ignored the statements from her reporting seniors — both the various

statements made in 1997 (that the supervisor wanted to reward another officer for his

improvement, that the downgrade in recommendation would not hurt plaintiff's career,

and that the number of officers in plaintiff's category had changed when it actually had

not) and the 2005 statement regarding helping a "fellow officer." See id. at 15-16.  In

addition to faulting the Board for not fully considering these factors, plaintiff maintains

that "choosing to reward an officer for improving performance rather than sustained

performance" was itself improper.  See id. at 23.  Finally, plaintiff argues repeatedly that

her supervisors failed to follow the directive "requir[ing] that the reporting senior

consider the performance trait average as the single most important factor in determining

promotion recommendations," for example by "fr[eezing] the officers in the same

position" in the second 1997 report as they were in the prior report.  See id. at 14-15, 22,

23-24.

i.  Legal Standard

    As noted above, "[t]he Secretary of a military department, acting through a

civilian board, 'may correct any military record when the Secretary considers it necessary

to correct an error or remove an injustice.'"  Cone, 223 F.3d at 792.  Although a federal

court has jurisdiction to review the decisions of such a board, "we do so under an

'unusually deferential application of the 'arbitrary or capricious' standard' of the

Administrative Procedure Act."  Id. at 793 (quoting Kreis, 866 F.2d at 1508).  Hence, a

court will defer to a board's decision "unless it is arbitrary and capricious, contrary to law,

or unsupported by substantial evidence."  Frizelle, 111 F.3d at 176.  Furthermore, even if

a board "could have explained its reasons . . . in more detail, 'an agency's decision [need

not] be a model of analytic precision to survive a challenge.'" Id. (quoting Dickson v.

Sec'y of Def., 68 F.3d 1396, 1404 (D.C. Cir. 1995) (alteration in original)).  All that is

required is that a board's decision "'minimally contain a rational connection between the

facts found and the choice made.'"  Id. (quoting Dickson, 68 F.3d at 1404).

ii.  Analysis

       The Court finds that the Board's decisions easily meet the unusually deferential

standard of review applicable here.  The Board's first decision in 2000 explained its

reasoning in some detail.  As the Board stated:

> The Board was unable to find the composition of your appraisal board was
> inequitable or that the location of your billet in the command structure was
> "viewed as the measure of effectiveness."  . . .  They acknowledged that
> the reporting senior's stated reason for marking you "promotable," which
> was a "change in the number of officers in the competitive category,"
> appeared inconsistent with the fact that the preceding fitness report he had
> submitted on you showed the same number of officers in your competitive
> category.  However, this did not convince them that he should have
> marked you above any of the officers who were marked "must promote."
> They noted the command fitness report instruction . . . provided only
> guidance concerning the relationship between trait average and promotion
> recommendation; it did not mandate a certain promotion recommendation
> for a certain range of trait averages. . . . Finally, your memorandum . . . did
> not convince the Board that your new reporting senior . . . gave pre-
> ranking guidance to your ranking board to retain all officers in their last
> promotion recommendation block, in view of the brief reporting period.

A.R. at 229-230.  In the Court's view, this statement alone serves as adequate explanation

to counter most of plaintiff's present complaints.  The Board clearly considered the

difficulty of plaintiff's assignments, as indicated by the statement regarding "the location

of your billet in the command structure," but found that the lower promotion

recommendation nonetheless fell within the discretion afforded to the reporting senior.

The Board also addressed the reporting senior's incorrect statement about the number of

officers in the group, finding that this too was insufficient to overturn the fitness report

due to the discretion afforded to the reporting senior.  The Board considered the allegation that the new reporting senior simply "froze" the prior supervisor's recommendations, and found the evidence unpersuasive.

There is, then, a reasoned basis for the Board's decision, which is just the opposite of an arbitrary and capricious agency action.  The Court is not willing to second-guess this apparently well-reasoned statement from the Board.  The difficulty of an officer's assignment is far from any court's realm of expertise, and plaintiff has received the benefit of the Board's review of the original determination from her supervisor. Similarly, an incorrect statement from a supervisor might be problematic in the first instance, but the Board considered that misstatement, as well as the allegation of an improper "freeze," and made reasoned determinations with respect to both.  As far as the Court can tell, the only remaining complaint that plaintiff might have with respect to the 1997 fitness reports is the allegation that it was improper to reward an officer for improvement at the expense of an officer with sustained performance.  But the directive simply does not support this contention; the "baseline guide" for translating trait averages into promotion recommendations easily leaves enough discretion in the hands of the reporting senior to allow for consideration of improvement.

With respect to the Board's December 2009 decision, plaintiff's only remaining allegations are that the Board improperly "rubber stamped" the advisory opinions and that the Board did not address the statement regarding wanting "to help out a fellow officer." But as discussed above, the advisory opinions did indeed address the "fellow officer" comment, so both these allegations really boil down to the claim that it is inappropriate

for the Board to rely on advisory opinions without providing its own detailed analysis of their correctness.

Plaintiff has not cited any authority for the proposition that a military review board, in its review of a promotion decision, needs to do more than state its agreement with the reasoning performed elsewhere within that military department. For its part, 10 U.S.C. § 1552(a) states: "The Secretary of a military department may correct any military record of the Secretary's department when the Secretary considers it necessary to correct an error or remove an injustice. Except as provided [under other circumstances], such corrections shall be made by the Secretary acting through boards of civilians of the executive part of that military department." This language does put an affirmative requirement on the Secretary to act through a civilian board; hence, as a general matter, the Secretary cannot actually have an entity other than a board make the decision. However, in the Court's view it is not inherently problematic for a military review board to seek out one or more advisory opinions from elsewhere in the department and then rely on the reasons stated in those opinions in coming to its determination. Here, the advisory opinions from elsewhere in the Navy specifically considered and addressed each of plaintiff's arguments. Plaintiff cannot legitimately argue that her points were not considered, but only that the consideration did not come directly out of the Board's mouth. Given the detailed response in the advisory opinions, the Board's statement that it agreed with the opinions' reasoning did "'minimally contain a rational connection between the facts found and the choice made.'" Frizelle, 111 F.3d at 176 (quoting Dickson, 68 F.3d at 1404). Hence, the Board's decision was not arbitrary or capricious and incorporated a reasoned consideration of the evidence. Accordingly, the Board's

decisions meet the deferential standard under which they are reviewed by this Court, and plaintiff's claims under the APA must fail.

d.  Special Selection Board

Finally, plaintiff argues that she is entitled under Navy regulations to a special selection board to ascertain whether she was entitled to the promotions she argues were hindered by her fitness reports.  First Am. Compl. at 9.  Specifically, plaintiff quotes SECNAV INSTRUCTION 1420.1B, which states:  "The Board for Correction of Naval Records (BCNR) may, in appropriate cases, conclude that an individual's case warrants referral to a special selection board.  In order to ensure consistency and uniformity in the referral of cases to special selection boards, the BCNR shall refer all such cases to CNO or CMC, as appropriate."  Pl.'s Cross-mot. at 19.  Plaintiff relies on this language to argue that "[t]he referral to CNO is mandatory and not discretionary."  Id.  But the quoted language plainly indicates that referral to a special selection board is not mandatory. True, the regulation states that "BCNR shall refer all such cases to CNO or CMC" — but "all such cases" are those "appropriate cases" in which the Board "may conclude that an individual's case warrants referral."  Here, referral was obviously not warranted because plaintiff's fitness reports and accompanying promotion recommendations did not warrant modification.  Plaintiff's attempt to interpret the regulation as mandatory cannot withstand even a cursory analysis of the text on which she relies.  And having rejected plaintiff's constitutional and APA challenges to the Board's decisions, the Court will reject this final claim as well.

IV.  Conclusion

Plaintiff has not established that she has a legal entitlement to a particular promotion recommendation, so her due process claim must fail.  Plaintiff has also asserted insufficient grounds to challenge the Board for Correction of Naval Records' determination that she was not discriminated against on the basis of gender.  Likewise, the Board's decisions with respect to plaintiff's remaining complaints were not arbitrary or capricious or unsupported by substantial evidence.  And finally, plaintiff is not entitled to a special selection board.  The Court will therefore grant defendants' motion for summary judgment and deny plaintiff's cross-motion.  A separate order has been issued on this date.

/s/
_____

JOHN D. BATES
United States District Judge

Dated:  March 23, 2012